**SANTA FE PACIFIC RAILROAD COMPANY, et al., Plaintiffs,**

v.

**SECRETARY OF THE INTERIOR, Defendant.**

Civ. A. No. 83–1939.

United States District Court, District of Columbia.

May 15, 1984.

Edward Weinberg, Richmond F. Allan, Duncan, Weinberg & Miller, Washington, D.C., for plaintiffs.

Glen R. Goodsell, Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

**MEMORANDUM OPINION**

BARRINGTON D. PARKER, District Judge:

In this proceeding, the Court is called upon to review an administrative decision rendered by the Arizona State Office of the Bureau of Land Management ("Arizona Of-

fice"), and affirmed as modified by the Department of the Interior's Board of Land Appeals ("BLA") in *Santa Fe Pacific Railroad Company*, 72 IBLA 197 (April 19, 1983). In the administrative proceedings below, plaintiff Santa Fe Pacific Railroad Company ("Santa Fe") claimed that it was entitled to receive a patent to certain land conveyed by a railroad land grant statute, Act of July 27, 1866, ch. 278, 14 Stat. 292. Santa Fe sought the patent on behalf of plaintiff Perrin Properties, Inc., the subsequent purchaser of the rights in question. The BLA rejected the railroad's application for a patent of railroad indemnity land filed pursuant to the savings clause provision of section 321(b) of the Transportation Act of 1940, Pub.L. 76–785, ch. 722, 54 Stat. 898, 954 (codified as amended at 49 U.S.C. § 10721).

The sole question presented is whether the BLA was correct in concluding that the plaintiffs' right to a patent of the land was subject to recordation under the Act of August 5, 1955, Pub.L. 84–247, ch. 573, 69 Stat. 534.[1] It is undisputed that the plaintiffs did not record their interests under this Act, and the parties agree that other material facts are not in dispute. The matter is presented to the Court on cross motions for summary judgment. For the reasons set out below, the Court concludes that the plaintiffs' rights to the patent were extinguished because the railroad failed to comply with the provisions of the 1955 Act. Accordingly, the defendant's motion for summary judgment is granted, and the plaintiffs' complaint is dismissed with prejudice.

## FACTUAL BACKGROUND

### A.

### 1866 Statute

Three congressional statutes are relevant to the resolution of this case. The first,

the Act of July 27, 1866, ch. 278, 14 Stat. 292 ("1866 Act"), was one of numerous railroad land grant statutes enacted by Congress in order to aid the construction of a transcontinental railroad system. This railroad construction was designed to promote the development of the West in the period following the Civil War. In view of this intent, the 1866 Act incorporated the Atlantic and Pacific Railroad Company ("A & P"), gave the Company a right of way through certain public land, and granted the railroad the right to select every odd-numbered section of public land within forty miles of either side of the projected railroad line. The area within these boundaries was known as the "place" limits of the grant. In addition, the Act granted A & P the right to select sufficient lands to counter any deficiency in the "place" limits which might arise from other dispositions of the property. This property could be selected from an additional ten-mile strip of land on either side of the place limits, known as the "indemnity" limits of the grant.[2]

In 1887, A & P filed an indemnity selection for 1,244,160 acres of land under the 1866 Act. The railroad's claim was rejected at that time because the requested land was not surveyed. A & P later conveyed its interests in the indemnity lands to Lilo and Robert Perrin in October 1896. In 1935, the Perrins subsequently transferred their interests to the plaintiff Perrin Properties, Inc. It is undisputed that plaintiff Santa Fe Pacific Railroad Company ("Santa Fe"), as the successor in interest to A & P, is entitled to assert any rights conveyed to Perrin Properties which arise from the 1866 Act.

### B.

### Transportation Act

After these events, Congress passed the Transportation Act of 1940, Pub.L. 76–785,

---

1. The full text of the 1955 Act appears in the note to 43 U.S.C. § 274.

2. The operation of the grant to A & P is explained in some detail in *Chapman v. Santa Fe Pacific Railroad*, 198 F.2d 498, 499 (D.C.Cir. 1951), *cert. denied*, 343 U.S. 964, 72 S.Ct. 1058, 96 L.Ed. 1361 (1952). The relevance of the *Chapman* case is discussed *infra* at 751.

ch. 722, 54 Stat. 898, which gave rate benefits to certain railroads in exchange for their release of land claims against the United States. The Transportation Act also included a savings clause which provided that land previously sold to innocent purchasers for value could be excluded from the terms of the release. 54 Stat. 898, 954. In accordance with this provision, Santa Fe executed a release which exempted the land which it had sold to innocent purchasers for value prior to September 18, 1940. Santa Fe also filed a list of these exempt transfers, including the transfer to the Perrins. The Secretary of the Interior accepted the release and the accompanying list on March 1, 1941.

### C.

### Recordation Act

Despite the plaintiffs' undisputed compliance with the 1866 Act and the Transportation Act, the defendant asserts that the plaintiffs' failure to comply with a third congressional enactment, the Act of August 5, 1955, Pub.L. 84–247, ch. 573, 69 Stat. 534 ("Recordation Act"), extinguishes their claim to the land in question. Although the Recordation Act provides that rights to certain lands previously granted by the federal government must be recorded with the Department of the Interior in order to be preserved, the plaintiffs contend that the land they seek is not included within this category. The specific terms of the Act are discussed in greater detail *infra* at 751.

In 1977, Santa Fe filed a patent application on behalf of the Perrins for 14,632.72 acres of land situated in the Prescott National Forest in Arizona. This land is within the indemnity limits of the grant made to A & P. On January 7, 1982, the Arizona State Office rejected the plaintiffs' patent application. On appeal, the Board of Land Appeals held that Santa Fe had a vested right to select the subject indemnity lands under the 1866 Act, and that this right should have been recorded under the Recordation Act. *Santa Fe Pacific Railroad Company*, 72 IBLA 197 (April 19, 1983). Since the claim was not timely recorded under that Act, the BLA affirmed the decision of the State Office. This litigation ensued on July 7, 1983.

### LEGAL ANALYSIS

Although the parties have devoted a great deal of time and attention to a discussion of the history of various railroad land grant statutes and the plaintiffs' undisputed compliance with the terms of the Transportation Act, the interpretation of the provisions of the 1955 Recordation Act is the key to determining whether the administrative decision denying the plaintiffs a land patent was arbitrary, capricious, an abuse of discretion, or contrary to law within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.[3] In short, the issue presented is whether the BLA correctly characterized the plaintiffs' interests as a lieu selection right which was subject to recordation under the statute.

Although the Recordation Act was enacted nearly 30 years ago, its relevant provisions have not as yet been interpreted by the courts.[4] Under these circumstances, the meaning of a lieu selection right must be gleaned from the literal terms of the statute and the interpretation of similar terms provided by the Court in *Chapman v. Santa Fe Pacific Railroad Company*, *supra*, as well as the legislative history of the Act.

**3.** While the parties have devoted very little attention to the appropriate standard of review in this case, the Court considers that judicial review of this administrative decision should be governed by the APA.

**4.** Although other State Offices of the Bureau of Land Management have issued patents to land transferred by railroads, the validity of these issuances has never been litigated. With the exception of four patents issued by the Idaho office, all of these patents were *issued for* lands within the place limits of railroad grants. This characteristic distinguishes them from the land transferred by Santa Fe. *See* Defendant's Answer to Questions Posed by Court in *Notice to Counsel*, filed March 12, 1984.

## A.

### Literal Language of the Statute

Section 1 of the Recordation Act provides that:

> ... any person claiming rights to [certain land under enumerated statutes]; or *any lieu selection* or scrip right ... not enumerated herein (*except the indemnity selection rights of any State, or the Territory of Alaska*), shall within two years from the effective date of this Act, present his holdings or claim for recordation by the Department of the Interior. (emphasis added).

69 Stat. 534–35. Section 4 of the Act further provides that:

> Claims or holdings not presented for recordation, as prescribed herein, shall not thereafter be accepted by the Secretary of the Interior for recordation or as a basis for the acquisition of lands.

69 Stat. 535. Although this statutory language is not as unambiguous as the defendant suggests, the Court finds that the Act mandates recordation of the indemnity interests asserted by the plaintiffs.

The Recordation Act requires that claims to land under certain enumerated statutes, as well as lieu selection and scrip rights, must be recorded with the Department. Although the Act does not define a lieu selection right, similar statutory language appears in the 1866 Act. Section 3 of the 1866 Act gave the A & P railroad the right to select land from the ten-mile belt (the indemnity limits) "in lieu" of land within the original forty-mile belt (the place limits), in the event that sections within the forty-mile belt "shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of...." 14 Stat. 292, 294–95.· This similarity is instructive because the 1866 Act is the measure which gave rise to the lieu selection rights which the plaintiffs assert. Thus, the language of the 1866 Act suggests that Santa Fe's right to select indem-

nity lands in lieu of place lands is a lieu selection right.

This conclusion is also supported by parallel language in section 1 of the Recordation Act, which provides that "indemnity selection rights of any State, or the Territory of Alaska" are not required to be recorded. 69 Stat. 534, 535. This exception suggests that Congress was aware of the selection interests possessed by other government entities, as well as those of private parties, and determined that only the selection rights of private parties must be recorded under the statute. Since the lieu selection rights of private entities such as Santa Fe are not excluded from the operation of the statute, it is reasonable to assume that these rights are encompassed by the statute.

## B.

### The Chapman Decision

The opinion of the Court in *Chapman v. Santa Fe Pacific Railroad Company*, 198 F.2d 498 (D.C.Cir.1951) sheds some light on the kinds of rights which constitute a lieu selection right. In *Chapman*, the Secretary of the Interior argued that Santa Fe had forfeited its interest in lands granted under the 1866 Act because the railroad did not select specific lands prior to conveying its interest in those lands to an innocent purchaser for value. *Id.* at 500. In rejecting the Secretary's argument, the Court characterized Santa Fe's right to choose indemnity lands in lieu of place lands as a vested right of selection. *Id.* at 501. This analysis at a minimum suggests that the Department's interpretation of the related language of the Recordation Act is not plainly unreasonable or contrary to law.[5]

## C.

### Legislative History

Although the legislative history of the Recordation Act is sparse, several legisla-

---

**5.** Although the Court's explanation of Santa Fe's rights and obligations under the Transportation Act and the 1866 Act does not provide a definitive answer to the requirements of the Recorda-

tion Act, its explanation of terms that later appear in the Recordation Act is useful in view of the fact that the parties have cited no contrary authority.

tive developments are relevant to determining the type of rights which must be recorded under the statute. First, the reports of the House and Senate committees which recommended passage of the 1955 Act (H.R. 2972) do not suggest that the scope of the Act should be narrowly interpreted. In discussing H.R. 2972, both committees stated that recordation of "scrip, lieu selection, and *similar rights*" was required. S.Rep. No. 880, 84th Cong., 1st Sess. 1, *reprinted in* 1955 *U.S.Code Cong. & Ad.News* 2681 ("Senate Report") (emphasis added); H.R.Rep. No. 749, 84th Cong., 1st Sess. 1 (1955) ("House Report"); *see* Hearings on H.R. 2972 before Subcomm. on Public Lands of House Interior and Insular Affairs Committee, 84th Cong., 1st Sess. 32–33 ("House Hearings") (statement of James A. Lanigan, Acting Ass't Solicitor, Interior Department). This broad delineation of the reach of the Act, coupled with its purpose of "[imposing] a reasonable statute of limitations in order that [ ] old claims may be finally settled," Senate Report at 2681; *see* House Report at 3, suggests that the Act applies to the railroads' dormant land claims.[6]

Although the plaintiffs do not dispute that the Act was intended to apply to stale land claims, they conclude that Santa Fe complied with this purpose by giving the Department notice of innocent purchasers for value under section 321(b) of the Transportation Act. In other words, the plaintiffs believe that the Recordation Act does not apply to grants made pursuant to the railroad land grant statutes if those claims were in fact recorded under the earlier statute. This argument would be more persuasive if the Transportation Act were a recordation act, or if it provided for the automatic issuance of a patent after a finding that a railroad had sold land to an innocent purchaser for value. These issuances, however, are specifically conditioned on the requirement that the patents must be "fully and finally approved by the Secretary of the Interior to the extent ... authorized by law." 54 Stat. 955. Thus, Congress left open the possibility that patents could be withheld even if a railroad complied with the requirements of the Transportation Act. Under these circumstances, compliance with the Transportation Act does not satisfy the requirements of the Recordation Act.

This analysis is also supported by the remarks of Congressman Udall, who believed that H.R. 2972 encompassed dormant land claims held by railroads such as the Santa Fe. During the course of subcommittee hearings, Congressman Udall stated that "people who rest on their rights should lose their rights eventually," and expressed his belief that the bill would require railroads such as the Santa Fe to file claims within the statute of limitations period. House Hearings at 12–13. Harold Hochmuth, a Department spokesman, concurred with Congressman Udall's description of the purpose of the Act. *Id.* at 13. This interchange suggests that the plaintiffs' noncompliance with the Recordation Act precludes issuance of the patent in this case.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted, and the plaintiffs' complaint is dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

---

6. The plaintiffs point to the fact that the Department of the Interior did not include the 1866 Act or any other railroad land grant statute in a list of statutes whose grantees would be affected by the Recordation Act. *See* Senate Report at 2681–82, House Report at 2. While this omission is troubling, it does not establish the plaintiffs' right to the patent because the Department stated that the list was not intended to be exhaustive. *See* letter from the Director of the Bureau of Land Management, Interior Department, dated March 18, 1955 to the Chairman of the House Committee on Interior and Insular Affairs, House Report at 2.